### L. D. WARFIELD *vs.* MOSES B. WATKINS.

S., the maker of a note, and the plaintiff and W. his sureties, being sued thereon, the plaintiff, before judgment, paid to the holder one half of the amount due on the note, and costs. The holder thereupon, by a written agreement acknowledging that he had received from the plaintiff $45 in full for his share of the note, as one of the sureties, discharged him from all further liability thereon, and agreed to use due care and diligence in the collection of the note and costs out of S.; and when collected, to pay the plaintiff one half of all he should be able to collect on the note. *Held,* that the payment, by the plaintiff, of a part of the costs of the action on the note, being a payment of what he was not, at the time, under a legal obligation to pay, formed an ample consideration for the agreement of the defendant. And this, whether the action had been previously discontinued or not.

In such a case, the holder, having agreed to make the effort to collect the note of the principal, is bound to do so, by resorting to legal proceedings, if necessary.

And in an action against him, upon his agreement, it will not be a valid defense for the holder, that the principal might, by reason of the payment to such holder, by the plaintiff, of one half of the note and costs, and by the

other surety, subsequent to the agreement, of the other half of the debt, have successfully defended an action against him on the note. For *non constat* that the principal would, if sued, have availed himself of the payments by the sureties, or have been able to establish that his liability on the note was discharged.

There is no such impossibility of performance, in such a case, on the ground of the principal having been discharged by the payment of the note, as will relieve the holder from the obligation of his contract.

Costs do not become a debt against a party to an action, until judgment; unless he agrees to pay them.

THIS was an appeal from a judgment of the county court of Yates county, reversing a judgment rendered by a justice of the peace in favor of the appellant, who was the plaintiff below, for $46.88, damages and costs. The facts out of which the alleged cause of action arose are as follows : On the 26th of January, 1855, one Scott as principal, and Alonzo Watkins and the plaintiff as his sureties, made their promissory note for $75, payable to Samuel Miller or bearer, one year from its date. The note was transferred to Charles C. Sheppard, who brought an action upon it, in the supreme court, against all the makers. Before judgment Sheppard sold the note to the defendant, who paid therefor the whole amount due on the note, and also $9.50 costs of the suit, making in all $90. There was no evidence that the suit was discontinued by express arrangement when the defendant thus succeeded to the interest of Sheppard therein. After the purchase, and on the same day, the plaintiff paid the defendant one half of the note and costs, ($45.) The defendant, on receiving the money, entered into an agreement in writing with the plaintiff, in which, after reciting the bringing of the suit by Sheppard in the supreme court, and that the defendant had purchased the note of Sheppard and paid him therefor $80.49 and also $9.50, the costs of the suit, and also that he had received of the plaintiff $45, in full for his share of the note as one of the sureties thereon, and discharged him from all further liability on said note, the defendant agreed to use due care and diligence in the collection of the note and costs out of Scott, the

principal, and when collected to pay the plaintiff one half of the said note and costs; that is, one half of all he should be able to collect on said note. Shortly after the execution of this agreement, Alonzo Watkins paid his half of the note. Scott was out of the state when the agreement was made, but returned in May, and died in June, 1856. On the 2d of July, 1856, the plaintiff brought this action for a breach of the agreement, alleging that the defendant had violated the same in not using diligence in collecting the note of Scott. The cause was tried by a jury. At the close of the plaintiff's proof, the defendant moved for a nonsuit on these grounds, among others: 1. That the agreement was void for want of consideration; and 2. That the note in question had been paid, and could not therefore be enforced against Scott by the defendant. The motion was denied, and the jury rendered a verdict for the plaintiff, upon which the judgment was entered. The plaintiff appealed.

*Daniel Morris,* for the appellant. I. Was the contract void for want of a consideration? Warfield was liable to the defendant, when he purchased said note of C. C. Sheppard, for the principal and interest, but not for any costs; costs could not be enforced against any one, after the suit was discontinued. Yet Warfield paid the defendant $4.50, half of said costs, which was included in the $45 named in said agreement, and furnishes a valid and absolute consideration.

II. Was the note a paid note, as claimed by the defendant? (1.) This was a question of fact for the jury, and if there is evidence both ways, their finding is conclusive. (*Rogers* v. *Ackerman,* 22 *Barb.* 134.) (2.) The agreement requires the defendant "to use due care and diligence in the collection of the said note and costs out of said Scott." How could this be if it was paid? Harpending testifies, "The note was to be kept alive against the principal, Scott, and enforced against him." No valid objection was made to this evidence; hence it was properly before the jury. "Parol evidence is always admissible to apply

a written contract to the facts, and its practical execution in reference to such facts." (*Spencer* v. *Babcock*, 22 *Barb.* 326.) (3.) The defendant continued to hold the note, and signified he held it to be enforced by him against the principal, Scott. (4.) Nothing was indorsed as paid on the note, but a receipt was taken containing a clause repudiating payment ; for it required the defendant to enforce the note, not to cancel it, thus specifying what was to be done with it. (5.) Afterwards the plaintiff is urging the defendant to collect the note against Scott. The defendant then holds the note, and is making efforts to procure a judgment in his own name against Scott. Here is the defendant's act long after the execution of the agreement, showing the note was not paid, and the jury had a right to say, from the evidence and the acts of the parties, the money advanced by Warfield to the defendant was a deposit, not to be applied in satisfaction of the note, to the end that the note might be enforced against the principal. (6.) A further view, and one of much weight, is this : Where a contract admits of two significations, the one must be adopted which renders it operative, rather than that which will render it void. (*Archibald* v. *Thomas*, 3 *Cowen*, 284.) The agreement in question was drawn for some purpose. What was that purpose ? The jury have from its contents and all the evidence given the agreement effect, by making it operative ; whereas the county court, by its judgment, has adopted a signification which renders it void. A further rule of law is, if the intention of the parties be doubtful, the construction is to be adopted which is most beneficial to the promisee. (*Marvin* v. *Stone*, 2 *Cowen*, 781.). (7.) It is a usual thing for a surety to advance money to be held in deposit, thereby keeping the note in life, and by so doing, a surety who pays a debt of his principal has a right to be put in the place of the creditor, and to avail himself of every means proposed by the creditor to enforce the payment against the principal. (*New York State Bank* v. *Fletcher*, 5 *Wend.* 85, 89. 10 *John.* 524. 2 *E. P. Smith*, 336.) Suppose the defendant had sued Scott,

could he have set up the fact that the note had been paid? Suppose the defendant had sued all the parties, and had obtained a judgment, and Warfield had paid the judgment, could he not have enforced the judgment against Scott? Much more in the case at bar, where the note is not canceled, nor taken up, but held by the creditor with and for the express purpose of enforcing the same against the principal.

*James C. Smith,* for the respondent. I. The note in question having been paid, could not have been enforced as against Scott, and the defendant's agreement to collect it of Scott was therefore impossible to be performed, and void. (1.) An agreement which is impossible of performance is utterly void, and no action can be maintained on it. (1 *Parsons on Cont.* 382, *note b, and authorities and cases there cited.*) (2.) The defendant's agreement in this case was impossible to be performed, because the note which he undertook to collect had been paid. One half of it was paid by the plaintiff to the defendant at or before the time of making the agreement in question, and the plaintiff was thereupon discharged from his liability on the note. Subsequently, Alonzo Watkins paid his half of the note to the defendant. The precise date of this payment does not appear: it was made after the note came from Penn Yan, that is, after the defendant bought it. And probably *soon* after, because the defendant bought it at his brother's request. The plaintiff was obliged to receive the amount of the note when it was offered to him by Alonzo Watkins; indeed, a tender of the money, even if unaccepted, would have defeated an action on the note. There is no conflict of testimony as to the question of payment—the testimony is all one way; and as to the payment made by the plaintiff, there is no question of fact. Upon the facts stated in the agreement, which of course cannot be disputed, the note was extinguished *pro tanto* by the plaintiff's payment; and even if the balance of the note had not been subsequently paid, the plaintiff was not entitled to recover, in any event, more than one half of the

amount unpaid, and the judgment rendered by the justice was too large, and therefore properly reversed. The plaintiff himself had a cause of action, and the only cause of action against Scott, for money paid at his request, and it is owing to his own negligence alone, that Scott was not prosecuted. The talk between the parties that the note was to be "kept alive," notwithstanding the payment, amounted to nothing, for the parties could not make an arrangement whereby Scott would be liable at one and the same time to the defendant on the note as unpaid, and to the plaintiff for having paid it.

II. We contend also that there was no consideration for the defendant's agreement. There is no evidence that the suit commenced by Sheppard was discontinued *before* the making of the agreement in question. It certainly was not discontinued by the bare fact of the defendant's purchasing Sheppard's interest in the action, and paying him the amount of his claim and costs, unless there was an express agreement to that effect, of which there is no evidence. The defendant as Sheppard's assignee had a right to prosecute the suit, and if he had done so he would have obtained judgment for the whole amount of the note and the costs of the action, against all the makers of the note; and if the judgment had been collected of the sureties, they could have maintained an action against the principal, for the costs paid by them, as well as the debt. When the suit was settled by the plaintiff's paying one half of the amount, the defendant, as Sheppard's assignee, had a right to the costs, the same as if the suit had gone to judgment. (*Code*, § 322, *5th ed. and notes.*) The plaintiff therefore paid no more than he was legally bound to pay. There is certainly no such evidence in the written agreement. Nor does Harpending testify that the suit was discontinued. He merely states that he advised the plaintiff that he was not liable for any of the costs; but it does not appear that the defendant was present, and if he was, Harpending merely expressed his opinion on a question of law, and it does not appear upon what state of facts his opinion was based. The remark that

" the plaintiff would have been liable *before the purchase* of the note," &c. was made by the witness on the trial before the justice, and not to the parties at his office. But even if it was made to the parties, it shows nothing more than that the opinion expressed was based upon the bare purchase of the note, for the fact of a discontinuance of the suit is not adverted to by Harpending.

*By the Court*, T. R. STRONG, J. The payment by the plaintiff, of part of the costs of the action on the note, formed an ample consideration for the agreement in question. Whether the action had been previously discontinued or not, makes no difference in regard to this point. If it had been, clearly there was no legal claim against the plaintiff for any portion of the costs; if it had not been, he was under no obligation to pay the costs while the action was pending. Costs do not become a debt against a party to an action until judgment; unless he agrees to pay them. (*Supervisors of Onondaga* v. *Briggs*, 3 *Denio*, 173. *Hunt* v. *Middlebrook*, 14 *How. Pr. Rep.* 300. *Torry* v. *Hadley*, *Id.* 357.) Section 322 of the code has nothing to do with the case. That section merely prohibits the demanding from a defendant, as costs, upon a settlement before judgment, beyond certain rates. It applies only to a case where the settlement is upon the terms of paying costs by the defendant. If a settlement before judgment is without any provision for the payment of costs, the plaintiff loses them. (*Johnston* v. *Brannan*, 5 *John.* 268.) He may refuse to settle without payment of costs; so a defendant may refuse to pay them for the purpose of a settlement. If a defendant does agree to pay the costs, on a settlement in such a case, that section regulates the amount. The principle relied upon by the defendant's counsel, that payment of what a party is legally liable for is not a sufficient consideration for a promise, is therefore wholly inapplicable to the present case. There was no legal liability of the plaintiff for costs when the agreement for a settlement was made. He paid what he was not

at the time under a legal obligation to pay, in consideration of the agreement; and that was a legal consideration.

By the agreement, the defendant agreed "to use care and diligence in the collection of the said note and costs out of the said Scott," the principal debtor in the note, and when the same was collected, to pay the plaintiff one half of all he might be able to collect on the note. I think it is not a valid defense for the defendant in this action upon the agreement, that Scott might, by reason of the payment to the defendant, by the plaintiff, of one half of the note and costs, and by the other surety, subsequent to the agreement, of the other half of the debt, have defended successfully an action against him on the note. The agreement required the defendant to make the effort to collect of Scott; and it was his duty to do so, by resorting to legal proceedings for the purpose, if necessary. Scott might not have availed himself of the payments by the sureties; he was equitably bound to pay the amount of the debt, for the benefit of the sureties, and might not have thought proper to interpose any obstacle to an action on the note itself; and if he had done so, he might not have been able to establish that his liability on the note was discharged. But if he would have defended, and could have prevailed, the defendant having agreed to make the effort to collect the note of him, was bound to do so. He can no more set up that the effort would have been fruitless, than could the holder of a note, in an action on a guaranty for its collection. The answer in both cases is that the contract required it. In regard to an action on a guaranty, *Newell* v. *Fowler*, (23 *Barb.* 628,) and the cases there cited, are in point, and I think the principle of them applicable to this case.

The last clause of the agreement does not qualify the defendant's obligation " to use due care and diligence in the collection." It simply limits the obligation to pay over, to what he might be able to collect, on using such care and diligence.

It is argued on the part of the defendant that his agreement, in reference to the collection of the note, was impossible

of performance, and therefore void. The case of *Beebe* v. *Johnson* (19 *Wend.* 500) shows there is no force in this position. There was no such impossibility as would relieve from the obligation of a contract.

The view of the case now taken renders the consideration of the question as to the effect of the payment, in regard to extinguishing the liability of Scott on the note, unnecessary. It is also in accordance with the equities of the case. Upon the face of the agreement it is apparent that the parties intended the payment by the plaintiff to the defendant should not affect the liability of Scott on the note; and, in respect to the payment by the other surety, to the defendant, it does not appear that the defendant ever sought to make an arrangement whereby the payment would not impair the obligation of the note against Scott. Whether the note did not remain in life as to Scott, under the circumstances, I repeat, need not be considered.

It follows that the judgment of the county court should be reversed, and that of the justice affirmed.

[MONROE GENERAL TERM, December 5, 1859. *T. R. Strong, Welles* and *Smith,* Justices.]